**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

**PULI DHARANI VENKATA KANAKA DAMODARA RAO** *
3253 Normandy Woods Drive, Apt. #C *
Ellicott City, MD 21043
*
***Plaintiff***
*
v.
*
**XPEDITE TECHNOLOGIES, INC.**
Serve Registered Agent: * Civil Action No. 1:14-cv-03871
Anuradha Sayyaparaju
8830 Stanford Blvd., Suite 415 *
Columbia, MD 21045
*
and
*
**CORE EDUCATION AND CONSULTING SOLUTIONS, INC.** *
**D/B/A NETPIXEL, INC.**
**D/B/A EXANTAGE, INC.** *
Serve Registered Agent:
CSC – Lawyers Incorporating Service Co. *
7 St. Paul St., Suite 1660
Baltimore, MD 21202 *

and *

**QUADRANT 4 SYSTEM CORPORATION** *
Serve on:
Nandu Thondavadi *
CEO
2850 Golf Road, Suite 405 *
Rolling Meadows, IL 60008
*
Or
*
Dhru Desai
President *
2850 Golf Road, Suite 405
Rolling Meadows, IL 60008 *

*Defendants*

* * * * * * * * * * * * *

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Puli Dharani Venkata Kanaka Damodara Rao ("Plaintiff" or "Mr. Rao"), by and through undersigned counsel, Smith & Downey, P.A., and pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, files this First Amended Complaint and Jury Demand against Defendants XPedite Technologies, Inc., Core Education and Consulting Solutions, Inc., and Quadrant 4 System Corporation (collectively, "Defendants") and states the following in support thereof.

## I. INTRODUCTION

1. This lawsuit arises out of Defendants' intentional and unlawful conduct in the following particulars: (a) failure to timely and properly compensate Plaintiff for wages earned; (b) failure to compensate Plaintiff for hours worked and at the proper overtime premium rate; and (c) failure to pay minimum wage. As a result of Defendants' willful failure to properly compensate Plaintiff for all hours worked and for all wages due and owing, Defendants are liable to Plaintiff for violations of the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL") and Maryland Wage Payment and Collection Law ("MWPCL").

2. The relief now sought is to remedy, *inter alia*, Defendants' failure to timely, properly, and fully pay to Plaintiff wages due and Defendants' failure to pay appropriate overtime wages.

## II. PARTIES

### A. *Plaintiff*

3. Plaintiff Puli Rao ("Mr. Rao") is a resident of Howard County, Maryland.

4. Plaintiff was employed by XPedite Technologies, Inc. within the meaning of the FLSA.

5. Plaintiff was employed by CORE Education and Consulting Solutions, Inc. within the meaning of the FLSA.

6. Plaintiff was employed by Quadrant 4 System Corporation within the meaning of the FLSA.

7. Plaintiff was employed by XPedite Technologies, Inc. within the meaning of the MWPCL.

8. Plaintiff was employed by CORE Education and Consulting Solutions, Inc. within the meaning of the MWPCL.

9. Plaintiff was employed by Quadrant 4 System Corporation within the meaning of the MWPCL.

10. Plaintiff was employed by XPedite Technologies, Inc. within the meaning of the MWHL.

11. Plaintiff was employed by CORE Education and Consulting Solutions, Inc. within the meaning of the MWHL.

12. Plaintiff was employed by Quadrant 4 System Corporation within the meaning of the MWHL.

**B. *Defendants***

13. Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that Defendants' officers, directors, vice-principals, agents, servants, regional managers, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine and normal course and scope of employment of Defendants' officers, directors, vice-principals, agents, servants, regional managers or employees.

**i. XPedite Technologies, Inc.**

14. Defendant XPedite Technologies, Inc. ("XPedite") is a for-profit business entity that is incorporated in the State of Maine.

15. XPedite regularly conducts business in the State of Maryland.

16. XPedite has a principal place of business that is located in Howard County, Maryland.

17. XPedite employed Plaintiff from April of 2012 to July of 2014.

18. XPedite was an "employer" of Plaintiff within the meaning of the FLSA.

19. XPedite was an "employer" of Plaintiff within the meaning of the MWHL.

20. XPedite was an "employer" of Plaintiff within the meaning of the MWPCL.

21 During the time that XPedite employed Plaintiff, XPedite had an annual dollar volume of sales or business done of at least $500,000.

22. XPedite engages in interstate commerce.

23. Upon information and belief, XPedite was acquired by Core Education and Consulting Solutions, Inc. in 2011.

**ii. Core Education and Consulting Solutions, Inc.**

24. CORE Education and Consulting Solutions, Inc. ("CORE") is a for-profit business entity that is incorporated in the State of Tennessee.

25. Upon information and belief, CORE has a principal place of business located in Atlanta, Georgia.

26. CORE regularly conducts business in the State of Maryland.

27. Upon information and belief, CORE acquired all of XPedite's assets through an asset purchase in 2011.

28. CORE was an "employer" of Plaintiff within the meaning of the FLSA.

29. CORE was an "employer" of Plaintiff within the meaning of the MWHL.

30. CORE was an "employer" of Plaintiff within the meaning of the MWPCL.

32. CORE has an annual dollar volume of sales or business done of at least $500,000.

33. CORE engages in interstate commerce.

**iii. Quadrant 4 System Corporation**

34. Quadrant 4 System Corporation ("Quadrant 4") is a for-profit business entity that is incorporated in the State of Illinois.

35. Upon information and belief, Quadrant 4 has a principal place of business located in Rolling Meadows, Illinois.

36. Quadrant 4 regularly conducts business in the State of Maryland.

37. Upon information and belief, CORE sold the portion of its business that was formerly XPedite Technologies, Inc. to Quadrant 4 Systems Corp. in or around July of 2014.

38. Quadrant 4 was an "employer" of Plaintiff within the meaning of the FLSA.

39. Quadrant 4 was an "employer" of Plaintiff within the meaning of the MWHL.

40. Quadrant 4 was an "employer" of Plaintiff within the meaning of the MWPCL.

41. Quadrant 4 has an annual dollar volume of sales and business done of at least $500,000.

42. Quadrant 4 engages in interstate commerce.

## III. JURISDICTION AND VENUE

43. This Court has subject matter jurisdiction over the claims presented herein pursuant to the FLSA.

44. The claims set forth pursuant to the MWHL, MWPCL and Breach of Contract are so related and intertwined with Plaintiff's claims under the FLSA that they form part of the same case and controversy. Therefore, this Court has supplemental and ancillary jurisdiction over Plaintiff's Maryland State claims relating to Defendants' Breach of Contract and willful violation of the MWHL and MWPCL.

45. Venue is appropriate in this jurisdiction because this is the judicial district wherein Defendants conduct business, the location of Defendant XPedite's principle office, and this is the district wherein a substantial part of Defendants' unlawful employment practices described herein occurred.

## IV. COMMON FACTUAL ALLEGATIONS

### A. Defendants' Failure to Pay Wages and Plaintiff's Complaints

46. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 45 as if fully set forth herein.

47. XPedite and CORE generally hold themselves out as business and technology development firms.

48. Plaintiff was hired by XPedite and CORE in April of 2012 to work as a Quality Assurance Analyst.

49. XPedite and CORE agreed to pay Plaintiff at a rate of $48 per hour, plus overtime for all hours worked in excess of 40 hours per week.

50. Plaintiff's primary job duty throughout his employment with XPedite and CORE was to provide computer programming and engineering support to XPedite's/CORE's clients, including but not limited to, TCT Computing, Inc. ("TCT").

51. Plaintiff had the same primary job duties as described in Paragraph 50, *above*, throughout his employment with XPedite and CORE.

52. Plaintiff regularly performed services for XPedite's/CORE's client, TCT, located in Columbia, MD.

53. Plaintiff regularly worked out of the offices of TCT's client, Baltimore Gas and Electric, located in Baltimore, Maryland.

54. Plaintiff was also required to report on a regular basis to XPedite's/CORE's offices, located in Columbia, Maryland, and to check in with XPedite/CORE supervisors.

55. XPedite and CORE repeatedly failed to timely compensate Plaintiff for his earned wages.

56. XPedite and CORE repeatedly failed to fully compensate Plaintiff for all of his earned wages.

57. Beginning on or around August of 2013, XPedite and CORE began a trend of failing to timely and/or fully compensate Plaintiff for his earned wages.

58. Beginning on or around June of 2014, XPedite and CORE completely failed to compensate Plaintiff for his earned wages.

59. Plaintiff performed work for XPedite and CORE sufficient to entitle him to full payment for his wages during the periods where XPedite failed to timely and/or fully compensate him.

60. Plaintiff regularly worked more than 40 hours a week in May 2014 through June 2014, yet was not paid overtime.

61. Plaintiff made numerous complaints to XPedite and CORE regarding XPedite's/CORE's failure to timely pay wages.

62. Plaintiff made numerous complaints to XPedite and CORE regarding XPedite's/CORE's failure to fully pay wages due and owing to Plaintiff, including multiple complaints, both oral and in writing, to Mr. Ramkisham Hanumara ("Mr. Hanumara"), XPedite's Human Resources Manager, and to Mr. Dileep Kumar Bakireddy ("Mr. Bakireddy") in CORE's Human Resources Department.

63. On October 10, 2013, XPedite's Human Resources Team sent an email to Plaintiff stating that the payroll for the September 16th – September 30th pay period would not be processed timely, but would be processed sometime "early next week."

64. On October 22, 2013, XPedite's Human Resources Team sent an email to Plaintiff acknowledging that they had delayed payments to Plaintiff. In that email, the Human Resources Team indicated that they had just processed the payroll for the September 16th – September 30th pay period.

65. On November 7, 2013, XPedite's Human Resources Team sent an email to Plaintiff acknowledging further delayed payments to Plaintiff. In that email, the Human Resources Team indicated that they had just processed the payroll for the October 1st through October 15th pay period.

66. On December 11, 2013, XPedite's Human Resources Team sent an email to Plaintiff acknowledging further delayed payments to Plaintiff. In that email, the Human Resources Team indicated that they had just processed the payroll for the November 1st – November 15th pay period.

67. XPedite's last wage payment to Plaintiff was made on or about June 25, 2014, for the pay period ending on April 30, 2014. Following the June wage payment, Plaintiff continued to perform work for XPedite and to send XPedite his timesheets. However, XPedite completely failed to pay Plaintiff for his wages.

68. Plaintiff sent an email to Mr. Bakireddy on June 17, 2014, in which Plaintiff notified Mr. Bakireddy that XPedite/CORE owed Plaintiff at least 446 hours of pay. Mr. Bakireddy responded to this email by directing Plaintiff to call him. During Plaintiff's subsequent phone conversation with Mr. Bakireddy, Mr. Bakireddy admitted that CORE owed Plaintiff the wages, and assured Plaintiff that CORE would eventually pay the wages due and owing to Plaintiff. However, he told Plaintiff that he would have to continue to wait for the payments. CORE never compensated Plaintiff for the wages it owed to Plaintiff.

69. On June 24, 2014 Plaintiff sent a follow-up email addressed to both Mr. Bakireddy and Mr. Hanumara. Plaintiff reminded Mssrs. Bakireddy and Hanumara of conversations that he had with them on June 18th, June 20th, and June 21st 2014, in which Mssrs. Bakireddy and Hanumara had confirmed that Plaintiff would be paid the money that he was owed for his work. Plaintiff indicated in the email that such payments had not yet been made, and explained that XPedite's and CORE's failure to pay wages was causing him a financial hardship. Mr. Bakireddy responded by telling Plaintiff to "Call me." During Plaintiff's subsequent conversation with Mr. Bakireddy, Mr. Bakireddy acknowledged to Plaintiff that CORE owed Plaintiff wages, and assured Plaintiff that CORE would eventually pay the wages due and owing to Plaintiff. However, he told Plaintiff that he would have to continue to wait for the payments. CORE never compensated Plaintiff for the wages it owed to Plaintiff.

70. On July 21, 2014, Plaintiff sent an email to Mr. Hanumara stating that Plaintiff intended to resign from his position with XPedite on July 28, 2014. In that email, Plaintiff requested that XPedite compensate him fully by the date of his termination for all missed salary payments.

71. On July 22, 2014, Ms. Sharon McTighe, the Human Resources Manager/Payroll Manager of CORE, sent an email to Plaintiff responding to Plaintiff's resignation email dated July 21, 2014. Ms. McTighe informed Plaintiff that CORE "cannot do anything about your payment," but indicated that CORE was "working with a company to pay out all of the outstanding payroll" and she asserted that "[a]s of July 31st you will be paid semi-monthly on time." Despite this assertion, CORE never compensated Plaintiff for the wages it owed to Plaintiff.

72. On July 31, 2014, Plaintiff sent an email to Ms. McTighe and Mr. Hanumara, asking for an update on the payment schedule and indicating that he had still not received any payment for the work that he performed from May through July of 2014. Ms. McTighe and Mr. Hanumara did not respond to Plaintiff's July 31st email. Plaintiff sent further follow-up emails on August 4th, August 5th, and August 7th, but Ms. McTighe and Mr. Hanumara never responded to those emails.

73. Upon information and belief, sometime around July of 2014, CORE sold the portion of its business that was formerly XPedite Technologies, Inc. to Quadrant 4.

74. On August 7, 2014, Eva Shah, CORE's Human Resources Administrator, forwarded Plaintiff an email sent from Falguni Bhatt, the Human Resources Director of Quadrant 4. In that email, Ms. Bhatt stated that XPedite had sent Quadrant 4 details of XPedite's "pending payroll from May 2014 onwards." Ms. Bhatt acknowledged that Quadrant 4 owed Plaintiff the missing wages, and indicated that Quadrant 4 would be processing the wages due and owing to former XPedite/CORE employees in accordance with the following schedule:

| **Pending Payroll Period** | **Will be processed on** |
|---|---|
| | |
| 5/1/14 – 5/15/14 | 8/25/2014 |
| 5/16/14 – 5/31/14 | 9/25/2014 |

| 6/1/14 – 6/15/14 | 10/25/2014 |
| --- | --- |
| 6/16/14 – 6/30/14 | 11/25/2014 |

75. Despite Quadrant 4's admission that it owed Plaintiff wages, and despite the fact that it sent Plaintiff the foregoing payment schedule as set forth in Paragraph 74, *above*, Quadrant 4 never paid Plaintiff for any of the wages owed to him.

76. Defendants' failure to pay Plaintiff for his earned wages caused Plaintiff tremendous financial hardship. Specifically, Plaintiff was forced to incur significant credit card debt and to borrow money from family and friends to cover his living expenses. Moreover, Plaintiff's wife was pregnant during this time period in which Defendants wrongfully withheld wages, and is currently due to give birth in January of 2015. As a result of Defendants' failure to pay his wages, Plaintiff struggled with the heightened costs associated with his wife's pregnancy and the upcoming childbirth.

**B. Unpaid Labor Performed**

77. Plaintiff performed work for Defendants during numerous pay periods for which he was not compensated his earned wages.

78. When Defendants failed to pay Plaintiff for a pay period, Defendants failed to compensate Plaintiff at the minimum wage rate.

79. In May of 2014, Plaintiff worked 183 regular hours and 62 overtime hours for which he was not paid.

80. In June of 2014, Plaintiff worked 102 regular hours and 12 overtime hours for which he was not paid.

81. In July of 2014, Plaintiff worked 60 regular hours for which he was not paid.

**C. No Bona Fide Dispute**

82. There is no bona fide dispute that Defendants failed to pay Plaintiff timely from September through July of 2014.

83. There is no bona fide dispute that Defendants have not compensated Plaintiff for any of the work that he performed from May 1, 2014 through July 28, 2014.

84. There is no bona fide dispute that Defendants owe Plaintiff at least $21,888 in wages.

85. There is no bona fide dispute that Defendants owe Plaintiff substantial unpaid wages.

86. From the period of May 1, 2014 through the conclusion of Plaintiff's employment on July 28, 2014, Defendants failed to compensate Plaintiff for earned wages in an amount which is at least $21,888.

**D. Defendants Acted Willfully**

87. Defendants acted willfully, as that term is used in the context of the FLSA in their failure to properly compensate Plaintiff for all hours worked.

88. Defendants acted willfully, as that term is used in the context of the MWHL in their failure to properly compensate Plaintiff for all hours worked.

89. Defendants knew, or had reason to know, that Plaintiff was performing work without receiving full compensation.

90. Defendants knew, or had reason to know, that Plaintiff was performing work without receiving timely compensation.

91. Despite the fact that Defendants knew, or had reason to know, that Plaintiff was performing work for Defendants' benefit during periods when Plaintiff was not being properly

compensated, Defendant continued to allow Plaintiff to perform this work and failed to properly compensate him for this work.

92. The factual basis for establishing "willfulness," and that Defendants knew Plaintiff was performing work which was for the benefit of Defendants and for which Plaintiff was not receiving full or proper compensation, is described throughout this Complaint and includes, but is not limited to, the following: (1) Defendants were aware of the wage and hour law, were aware of the fact that they were not in compliance with the applicable laws, yet did not remedy the situation; (2) Defendants received numerous email correspondence and personal contacts from Plaintiff regarding Defendants failure to properly compensate Plaintiff for his earned wages, yet Defendants failed to make appropriate corrections with regard to these wage violations; (3) Defendants acknowledged to Plaintiff by email that Defendants failed to properly compensate Plaintiff for his earned wages, yet Defendants failed to make appropriate corrections with regard to these wage violations.

**COUNT I**
**(As to all Defendants)**
**Maryland Wage Payment and Collection Law**
**Md. Code Ann., Lab & Empl. §3-501, et seq.**
**(Failure to pay earned wages following conclusion of employment)**

93. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

94. Pursuant to the MWPCL, Defendants must pay their employees all wages due at regular pay periods. "Wage" is defined as "all compensation that is due to an employee for employment." This definition has been amended by the Maryland legislature to clarify that the statute is intended to specifically include overtime wages.

95. Pursuant to MWPCL, Defendants must pay their employees all wages due for work that the employee performed before the conclusion of employment on, or before, the day on which the employee would have been paid had their employment not been terminated.

96. Pursuant to MWPCL, Defendants must provide their employees with pay statements each pay period. Defendants failed in their legal obligation to regularly provide Plaintiff with pay statements each pay period.

97. Plaintiff has not been compensated his full measure of wages for all hours worked and was not compensated at the proper overtime premium rate for hours worked in excess of forth (40) in a single workweek.

98. By failing to timely pay Plaintiff his wages when due, Defendants violated MWPCL.

99. Defendants did not withhold Plaintiff's wages as a result of a bona fide dispute.

100. As the direct and proximate result of Defendants' violations of the MWPCL, Plaintiff suffered significant damages.

101. Because more than two weeks have elapsed from the date on which Defendants were required to have paid the wages, Defendants are liable to Plaintiff for their unpaid wages, plus an additional amount up to three (3) times the unpaid wages, reasonable attorneys' fees, interests and costs.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff:

a. Unpaid wages due under the MWPCL (which is an amount not less than $21,888);

b. Treble damages multiplied times the unpaid wages due and owing (which is an amount not less than $65,664);

c. Prejudgment interest;

d. Reasonable attorneys' fees and costs incurred in pursuing this action; and

e. Such other and further relief as this Court deems necessary and proper.

**COUNT II**
**(As to all Defendants)**
**Maryland Wage and Hour Law**
**Md. Code Ann., Lab & Empl. § 3-401, *et seq.***
**(Failure to pay wages owed for all hours worked, failure to pay minimum wage and failure to pay overtime)**

102. Plaintiff herein incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

103. Plaintiff was not paid for all hours worked, in violation of the MWHL.

104. Plaintiff, who was completely uncompensated for numerous pay periods, was not compensated at the required minimum wage rate during periods in which he was completely uncompensated.

105. Defendants did not compensate Plaintiff his overtime hourly rate for each hour worked in excess of 40 during a single workweek.

106. Defendants' failure to pay Plaintiff appropriate wages for all hours worked violated MWHL.

107. Plaintiff was entitled to be compensated for all hours worked, at a rate no less than minimum wage, and to be compensated at 1.5 times Plaintiff's regular hourly wage for each hour worked over 40 in a single workweek.

108. Defendants' failure to compensate Plaintiff at minimum wage and/or at 1.5 times his regular hourly wage for each hour in excess of 40 hours per workweek violated MWHL.

109. As the direct and proximate result of Defendants' violations of the MWHL, Plaintiff suffered significant damages.

110. Pursuant to the MWHL, Defendant is liable to Plaintiff for all hours worked which were not properly compensated and for the difference between the wages paid and the wages required by statute, plus reasonable attorneys' fees, pre- and post- judgment interest, fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff:

a. Unpaid wages due under MWHL (including unpaid regular-time, minimum wage, and overtime wages) (which is an amount not less than $21,888);

b. Treble, or alternatively liquidated, damages multiplied times the unpaid wages due and owing (which is an amount not less than $65,664)

c. Prejudgment interest;

d. Reasonable attorneys' fees and costs incurred in pursuing this action; and

e. Such other and further relief as this Court deems necessary and proper.

**COUNT III**
**(As to all Defendants)**
**Fair Labor Standards Act of 1938**
**29 U.S.C § 201, *et seq.***
**(Failure to pay wages owed for all hours worked, failure to pay minimum wage and failure to pay overtime)**

111. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

112. Defendants willfully and/or intentionally failed to pay Plaintiff the regular, minimum wage and overtime wages which Plaintiff was due and owed pursuant to the FLSA.

113. Defendants' actions were taken with willful disregard for the rights of Plaintiff under the FLSA.

114. As a result of Defendants' unlawful conduct, Plaintiff suffered a loss of wages.

115. As a result of Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants — in addition to the money judgment awarded for unpaid regular and overtime compensation — an additional equal amount as liquidated damages and interest on the monies due and owing.

116. The FLSA further provides that Plaintiff shall be awarded reasonable attorneys' fees and the costs of this action.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff:

a. Unpaid wages due under the FLSA (including unpaid regular-time, minimum wage, and overtime wages) (an amount not less than $21,888);

b. Liquidated damages multiplied times the unpaid wages due and owing (an amount not less than $43,776);

c. Prejudgment interest;

d. Reasonable attorneys' fees and costs incurred in pursuing this action; and

e. Such other and further relief as this Court deems necessary and proper.

**COUNT IV**
**(As to all Defendants)**
**Breach of Contract**
**(Failure to pay wages owed)**

117. Plaintiff hereby incorporates all allegations set forth in all of the foregoing paragraphs as though fully alleged herein.

118. Defendants promised and represented to Plaintiff that he would be properly compensated for labor performed.

119. Relying upon Defendants' promise, Plaintiff performed labor for Defendants.

120. Thereafter, Defendants failed to properly compensate Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff.

a. All unpaid wages owed to Plaintiff (an amount not less than $21,888);

b. Pre- and post-judgment interest; and

c. Such other and further relief as this Court deems necessary and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated: December 23, 201

Respectfully submitted,

______________________________

Douglas W. Desmarais, Esq.
Kerstin M. Miller, Esq.
SMITH & DOWNEY, P.A.
320 E. Towsontown Blvd., Suite 1 East
Baltimore, MD 21204
(410) 321-9000 (phone)
(410) 321-6270 (fax)
ddesmarais@smithdowney.com
kmiller@smithdowney.com
*Counsel for Plaintiff*